**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RICHARD F. KRAUSER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   **Case No. 08-cv-422-TLW** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Richard F. Krauser seeks judicial review of the decision of the Commissioner of

the Social Security Administration denying his claim for disability insurance and supplemental

security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C.

§§ 416(i), 423, and 1382c(a)(3)(A).  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties

have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 8].

## Plaintiff's Background

Plaintiff was born on August 3, 1956 and was 51 at the time of the ALJ's final decision.

[R. 33, 99].  Plaintiff testified that he received a GED and attended one semester of college.  [R.

34].  Plaintiff married Debbie J. Buxton on July 1, 1993 and they divorced on July 1, 1997.  [R.

99].  Plaintiff is currently unmarried.  [R. 34].  Plaintiff has no minor children.  [R. 34, 99].

Plaintiff met the insured status requirements through December 31, 2003.  [R. 17].  Plaintiff has

---

[1]  Plaintiff's applications for disability insurance benefits and SSI were denied initially and on
reconsideration.  A hearing before Administrative Law Judge ("ALJ") Charles Headrick was
held on August 21, 2007.  [R. 27-58].  By decision dated October 31, 2007, Judge Headrick
entered the findings that are subject of this appeal.  [R. 12-23].  The Appeals Council denied
plaintiff's request for review on May 30, 2008.  [R. 1-6].  The decision of the Appeals Council
represents the Commissioner's final decision for purposes of further appeal.   20 C.F.R. §§
404.981, 416.1481.

a past work history as a laborer (2003), stocker (2001-2003), steel worker (2000-2001), and truck driver (1995-1997).[2]  [R. 156-163].

In plaintiff's first Disability Report-Adult,[3] plaintiff alleges his disabling conditions are diabetes, rheumatoid arthritis, and degenerative arthritis.  [R. 121].  Plaintiff also alleges that these conditions make his eyesight vary from day to day, that he gets light headed and dizzy, that his arthritis makes it hard to stand or walk and causes him difficulty moving his legs, knees, hips and lower back.  [R. 121].

Plaintiff testified that he had severe pain in his back, shoulders, and legs which was the result of rheumatoid arthritis, osteoarthritis, degenerative joints, Hepatitis B and C, diabetes, high blood pressure, and tuberculosis.  [R. 34-35].  Plaintiff's treating physician, Dr. Lambert, prescribed plaintiff medications, ran blood work, and took X-rays.  [R. 36, 217-242].  Plaintiff testified that he could not sleep at night due to severe pain.  [R. 36].  Plaintiff also testified that he was taking medications which kept many of these conditions under control.  [R. 36-39].

The ALJ conducted a full five step sequential analysis in determining if plaintiff was disabled.  [R. 16-23].  At step one of the sequential process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since November 28, 2003, the alleged onset date of disability.  [R. 17].  At step two, the ALJ acknowledged plaintiff's severe impairments to be degenerative joint disease, diabetes, hepatitis B and C, and hypertension.  [R. 17].  The ALJ considered plaintiff's allegation that he had poor vision, but after reviewing the medical evidence, the ALJ determined this impairment to be non-severe because the medical evidence only established a slight abnormality.  [R. 18].  Also, the ALJ considered plaintiff's subjective

---

[2]  Plaintiff's work as a stocker and steel worker was while he was incarcerated by the Oklahoma Department of Corrections.  [R. 156-163].

[3]  The Court could not determine the date of this document.

complaints of a mental disorder but the record provided no medical evidence that plaintiff did in fact have any mental issues.  [R. 18].

At step three, the ALJ determined plaintiff's impairments or combination of impairments did not meet any listed impairments as provided in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18], (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

Before moving to step 4, the ALJ determined plaintiff had a residual functional capacity ("RFC") to perform medium work.  At the final step of the sequential analysis, the ALJ posed two hypothetical questions to the vocational expert ("VE").  Based on the hypotheticals, the VE testified that there were a significant number of jobs which plaintiff is capable of performing and which are available in the regional and national economy, including delivery driver, hand packager, janitor, laundry sorter, cleaner, clerical mailer, and order clerk.  [R. 23].

## Issues

Plaintiff argues that the ALJ erred in four ways:

(1) The ALJ failed to properly consider all of plaintiff's impairments throughout the disability process. [Dkt. # 16 at 2].

(2) The ALJ failed to properly analyze the opinion of plaintiff's treating physician. Id.

(3) The ALJ failed to perform a proper credibility determination.  Id.

(4) The ALJ failed to perform a proper determination at step 5 of the sequential evaluation process.  Id.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).  "Disabled" under the Act is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

3

months."  42 U.S.C. § 423(d)(1)(A).  A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail).  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.  Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  Id.  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.  "Evidence is unsubstantial if it is overwhelmingly contradicted by other evidence."  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  Even if the Court might have reached a different conclusion, if

supported by substantial evidence, the Commissioner's decision stands.  White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**Discussion**

**Whether the ALJ Failed to Consider All of Plaintiff's Impairments**

Plaintiff argues the ALJ failed to properly consider all of plaintiff's impairments.  [Dkt. # 16 at 2].  Plaintiff asserts that the ALJ improperly rejected plaintiff's subjective complaints about his deteriorating mental health.  Id.  Plaintiff alleges that the ALJ ignored evidence which identified the plaintiff's mental health problems.  The undersigned disagrees.

Plaintiff argues that the ALJ should have taken into account his mental impairments, because he subjectively complained about "going crazy," and he sought an evaluation at a mental health clinic.  [R. 169, 384].  At the time of the hearing, there was no medical evidence or files from the mental health clinic in the record.  [R. 27-58].  Plaintiff is responsible for furnishing medical evidence of claimed impairments.  20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).  Plaintiff cites to the record indicating plaintiff was diagnosed as having major depressive disorder.  [Dkt. # 16 at 2].  A review of the record indicates that plaintiff's claim is accurate, based on new evidence submitted to the Appeals Council.  [R. 398-399].  However, the new evidence pertained to dates after the ALJ's final decision.[4]  Id.  "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. §§ 404.970(b), 416.1470.  Thus, the new evidence cannot be given merit in evaluating plaintiff's alleged mental impairment.

---

[4]   The document from Morton Comprehensive Health Services is an assessment of plaintiff's mental health from November 8, 2007 through January 18, 2008.

Plaintiff also argues the ALJ failed to properly develop the record because he did not order a consultative examination to determine if plaintiff had a mental impairment. [Dkt. # 16 at 2]. "The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997). Here, the record contained no evidence to suggest that a consultative examination would have produced material information. There is no direct conflict in the medical evidence requiring resolution; the medical evidence in the record is not inconclusive; and additional tests are not required to explain a diagnosis already contained in the record. See id. at 1166. In fact, another evaluation from Morton Comprehensive Health Services, dated June 18, 2007, indicates plaintiff had no abnormal psychological findings. [R. 389-390]. Thus, the undersigned finds that the ALJ did not err by failing to order a consultative examination.

**Whether the ALJ Failed to Properly Analyze the Opinion of the Treating Physician**

Plaintiff next argues the ALJ failed to properly analyze the opinion of the treating physician, because he did not properly assess her residual functional capacity ("RFC"). [Dkt. # 16 at 3]. Furthermore, plaintiff argues the ALJ failed by not assigning controlling weight to the treating physician's opinion. Id. Plaintiff also argues that the ALJ's decision not to accept the treating physician's opinion is not supported by substantial evidence. Id. The undersigned disagrees.

Plaintiff's asserts the ALJ should have accepted the treating physician's RFC and that by not doing so, he improperly rejected the treating physician's opinion. The ALJ found that plaintiff had the RFC to perform medium work. [R. 18]. Dr. Lambert's RFC was in stark

contrast because she opined that plaintiff could not perform sedentary work activity.  [R. 21].

Social Security Ruling 96-5p states that certain issues are administrative findings.  An example is

an individual's RFC.   The ALJ rejected the treating physician's opinion, because it was

inconsistent with the doctor's own records and other substantial evidence of record.  [R. 21].

The ALJ carefully considered the opinion of the treating physician but because that opinion was

not consistent with the record, it was rejected.  Id.

Plaintiff argues the ALJ failed to specifically reference evidence which contradicted the

treating physician's findings.  However, the ALJ took into consideration the entire record in

making his determination regarding the treating physician.  The ALJ found:

> Dr. Lambert assessed the claimant with diabetes, hypertension, and osteoarthritis on January 7, 2007.  Dr. Lambert reported the claimant's diabetes and hypertension were uncontrolled due to the fact he did not take his medications. The claimant reported that he was unable to afford his medication.  In a follow-up examination on February 13, 2007, the claimant informed Dr. Lambert that his diabetes and hypertension were much improved since he restarted his medications.  The claimant also indicated that he found fair pain control with Tramadol.  CT scan of the liver on March 21, 2007, revealed an abnormal liver compatible with history of hepatitis B and C.  No focal lesions were identified.
>
> X-rays of the knees on May 18, 2007, showed no soft tissue swelling, no joint effusion, and no degenerative changes.  Overall, both knees were unremarkable. X-rays of the lumbar spine showed no acute bony abnormality.  Dr. Webb[5] noted that degenerative changes were present but within limits for the claimant's age. X-rays of both shoulders revealed no significant degenerative changes.

(citations omitted).  [R. 20].  The ALJ also looked at the questionnaire the treating physician

completed:

> Dr. Lambert submitted a questionnaire regarding the claimant on July 25, 2007, stating that the claimant had degenerative joint and disc disease, hepatitis B and C, and that his x-rays were consistent with limited range of motion.  She opined that the claimant was not able to perform even sedentary work activity.  Dr. Lambert further noted the claimant's concentration was moderately impaired and he suffered from cognitive side effects from his medication.  The doctor's opinion

---

[5] Dr. Webb is a doctor at Morton Comprehensive Health Services whose name appears, signed, on the same radiology documents as the unsigned name, Dr. Lambert.  [R. 217-219].

contrasts sharply and is without substantial support from the other evidence of record, which obviously renders it less persuasive.

(citations omitted).  [R. 21].  Furthermore, the ALJ took into consideration the opinion of the

consultative examiner:

> The claimant underwent a consultative examination on December 5, 2005.  Dr. Tienabeso reported that the claimant had a full range of motion in back, hip joints, knee joints, peripheral joints and shoulders.  There was no evidence of knee swelling or effusions.  Straight leg raising tested normal while sitting and lying down.  Deep tendon reflexes were normal and there was no tenderness in the lumbar region.  Dr. Tienabeso noted that the claimant walked slowly with a slight limp, but with a more or less stable gait.  Both heel and tow walking were normal.

(citations omitted).  [R. 20].  The ALJ also took into account plaintiff's testimony regarding his

daily activities.  Plaintiff testified that he could exercise, do yard work, do laundry, perform

housekeeping chores, and drive.  [R. 20].  Based on the above, the undersigned finds that the

ALJ clearly referenced substantial evidence which contradicted the treating physician's opinion.

Plaintiff argues the ALJ failed to explain what weight he gave the treating physician's

opinion.  The undersigned disagrees.

The proper legal procedure for evaluating the opinion of a treating physician is well

established.  "Under the regulations, the agency rulings, and our case law, an ALJ must give

good reason in the notice of determination or decision for the weight assigned to a treating

physician's opinion."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20

C.F.R. § 404.1527(d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5).  "The type of

opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's

impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or

mental restrictions.'"   Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006)

(unpublished).[6] Generally an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3d at 1300 (citing 20 C.F.R. § 404.1527(d)(2)).  However, it is error to give the opinion controlling weight simply because it is provided by a treating source.  Id.

In determining whether the opinion should be given controlling authority, the analysis is sequential.  First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with other substantial evidence in the administrative record.  Id.  If the answer is "no" then this portion of the inquiry is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence on record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the other factors enumerated in 20 C.F.R. §§ 404.1527, 416.927.  Those factors are:

> (1) The length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir.1995). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987) (citing 20 C.F.R. § 404.1527(d)(2)).

---

[6] Unpublished decision are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1:  10th Cir. R. 32. 1.

Third, if the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990).  The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight.  Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

As noted above, the ALJ discussed plaintiff's treatment and diagnosis from both the treating physician and the consultative examiner.  The ALJ looked at X-rays which show no abnormalities and a CT scan showing abnormalities consistent with hepatitis.  [R. 20].  Also, plaintiff testified that prescription medication provides relief from his medical problems.  [R. 29-51].  Based on the above, the treating physician's opinion that plaintiff could not perform sedentary work is contradicted by the medical evidence and her own records.

Plaintiff further contends the ALJ did not discuss the six Goatcher factors in explaining the weight the ALJ was giving to the treating physician.  [Dkt. # 16 at 5].  The ALJ is not required to expressly discuss each of the six relevant factors in determining how much weight a medical opinion must be given.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

As noted above, the ALJ discussed the treatment Dr. Lambert rendered to plaintiff in detail.  The ALJ found that the evidence of record was not consistent with the opinion Dr. Lambert reached.  The ALJ also looked at the consultative examiners report, plaintiff's daily activities, and the plaintiff's testimony.  [R. 19-20].  Based on the ALJ's analysis of the evidence as a whole, the ALJ reached the conclusion that Dr. Lambert's opinion should not be given controlling weight.  The ALJ provided reasons for the weight he assigned and nothing more is required.  Oldham, 509 F.3d at 1258.

Last, if the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Miller, 99 F.3d at 976.  Here, the ALJ did not say he rejected the opinion completely, but he could not afford it controlling weight.  [R. 21].

Plaintiff asserts the ALJ did not mention the "conflicts and inconsistencies" that were found between the evidence of record and the treating physician's opinion.  [Dkt. # 16 at 6].  The undersigned does not agree.  As discussed above, the ALJ evaluated the evidence and analyzed it in his opinion.  [R. 20-21].  Thus, the plaintiff's argument has no merit.

Finally, plaintiff asserts the ALJ should have relied on the more recent evaluation of the treating physician rather than the opinion of the consultative examiner which took place months earlier.  [Dkt. # 16 at 4].  Plaintiff fails to recognize the ALJ did rely on the more recent medical evidence from Dr. Lambert along with the opinion of the consultative examiner in making his determination.  The ALJ only rejected the opinion with regard to sedentary work.  Therefore, plaintiff's argument fails.

**Credibility Determination**

Plaintiff argues that the ALJ failed to do a proper credibility determination.  [Dkt. # 16 at 6].  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  Also, the ALJ is not required to make a "formalistic factor-by-factor recitation of the evidence."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ set forth a summary of plaintiff's testimony, as follows:

The claimant testified that he was diagnosed with rheumatoid arthritis and osteoarthritis in 2003.  He stated that both cause pain and fatigue keep him from work activity.  The claimant testified that he was diagnosed with hepatitis in 2000 which caused severe weight loss.  He stated that he takes medication and the

11

> hepatitis is not currently bothering him. The claimant testified that he takes medication for diabetes and hypertension and both are under control. He stated that his medications cause dizziness, lightheadedness, and affect his equilibrium. The claimant testified that his medication made his conditions better. <u>In a typical day, the claimant stated that he exercised, watched television, did yard work, helped with housework, and did his own laundry.</u> The claimant testified that he sleeps only 3 hours a night. He stated that out of an 8-hour day, he was able to sit 2 hours, stand 2 hours, and walk 45 minutes. The claimant testified that he could lift 5 pounds and he stated that he could drive. The claimant reported trouble with his vision, anxiety, and depression.

[R. 20] (emphasis added). The ALJ did make a credibility determination in his decision. He stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[R. 20]. As detailed throughout this decision, the ALJ articulated the evidence he relied on to show that no matter how severe plaintiff's subjective complaints were, plaintiff retained the functional capacity to perform medium work. Plaintiff fails to cite any medical evidence to show he could not work at a medium exertional level.

Furthermore, in making a credibility determination the ALJ must consider the relevant Luna factors which consist of "persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems…claimant's daily activities, and the dosage, effectiveness, and side effects of medication." Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

Here, the ALJ did consider other relevant factors when determining if plaintiff was credible. The ALJ looked at plaintiff's daily activities which included walking, yard work, driving, and other chores around the house. [R. 20]. The ALJ considered factors that aggravate plaintiff's pain including sitting, standing, walking, and bending of the joints. Id. The ALJ

heard plaintiff's testimony about his medical conditions. Id. The ALJ heard testimony about the

side-effects of plaintiff's medication. Id.

Finally, plaintiff argues the ALJ ignored plaintiff's attempts to obtain free medical care.

[Dkt. # 16 at 7]. This argument has no merit. The ALJ determined plaintiff had not provided

any evidence to show he was denied access or care from any medical source. [R. 21]. This

Circuit has held that the record must contain evidence that plaintiff does not have the ability to

pay for treatment or medication. Allen v. Apfel, 216 F.3d 1086 (10th Cir. 2000) (unpublished).

Since plaintiff has not provided any evidence showing he sought out and was denied treatment

because of his lack of financial resources, the ALJ did not commit error in this respect. Based on

the ALJ's analysis of other relevant factors, his credibility determination is not flawed.

It is recognized that an ALJ's credibility determination must be "closely and

affirmatively linked" to substantial record evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th

Cir. 1995). In this case, the ALJ did just that. In his decision, the ALJ clearly and affirmatively

linked his adverse determination of plaintiff's credibility to substantial record evidence. Our

precedents do not require more, and our "limited scope of review precludes [us] from reweighing

the evidence or substituting [our] judgment for that of the" agency. Flaherty v. Astrue, 515 F.3d

1067, 1071 (10th Cir. 2007).

Finally, the undersigned is sympathetic to plaintiff's complaints that many of the ALJ's

statements regarding his credibility analysis are conclusions that are "boilerplate" sentences and

that are not linked to any evidence. However, the inclusion of inapplicable language in the

decision does not mean that the ALJ's credibility analysis is fatally flawed. The Tenth Circuit

has come to similar conclusions, stating in one case that it had "some concerns" with the ALJ's

reliance on the plaintiff's failure to follow a weight loss plan and the plaintiff's performance of

13

minimal household chores.  Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).  In spite

of those concerns, the Tenth Circuit nevertheless affirmed the credibility finding because of

other, legitimate factors cited by the ALJ.  Id.  See also Lax v. Astrue, 489 F.3d 1080, 1089 (10th

Cir. 2007) (while ALJ's statement of "large variations" in tests was incorrect, there was still

substantial evidence supporting his finding of tests' invalidity); Mann v. Astrue, 284 Fed. Appx.

567, 571 (10th Cir. 2008) (unpublished) (finding credibility determination adequate when ALJ

discussed three points).  The ALJ's credibility determination was supported by substantial

evidence and was in compliance with the legal requirements.

**Whether the ALJ Failed to Perform a Proper Determination at Step 5 of the Analysis**

Plaintiff argues the ALJ failed to perform a proper determination at step 5 of the

sequential analysis because it was not apparent what the VE saw that would lead her to the

conclusion that she reached.  [Dkt. # 16 at 9].  Again, the undersigned disagrees.

At the hearing, the ALJ asked the VE what jobs would be available to a person with the

limitations set forth in exhibit 4F.  [R. 52].  Plaintiff argues that it is not apparent which factors

the VE took into consideration when making her determination that jobs existed in the national

economy for the plaintiff to perform.  However, plaintiff fails to recognize that there are only

five areas of limitation noted on exhibit 4F.  [R. 207].  These limitations are:

> Occasionally lift and/or carry:  50 pounds;
> Frequently lift and/or carry:  25 pounds;
> Stand and/or walk:  about 6 hours in an 8-hour workday;
> Sit for a total of:  about 6 hours in an 8-hour workday; and
> Push and/or pull:  unlimited, other than as shown for lift and/or carry.

[R. 207].  Since the VE took each of these limitations into account, the undersigned finds that the

hypothetical posed to the VE was precise.  The undersigned understands plaintiff's argument,

and if there were limitations contained in exhibit 4F that were not considered, then a problem

14

could be present.  However, since exhibit 4F contains only five limitations, all contained on the same page of the document and all presented to the VE, this argument fails.

Plaintiff further argues that the ALJ did not consider any of the limitations imposed by the treating physician.  [Dkt. # 16 at 9].  This argument has no merit.  The ALJ rejected the opinion of the treating physician for reasons discussed above.

Finally, plaintiff argues the hypothetical posed to the VE was inaccurate because it did not contain any mental limitations.  Id.  This argument is without merit because at the time of the ALJ's decision there was no evidence in the record to indicate plaintiff had any mental limitation.  The only evidence which indicates plaintiff had mental limitations was introduced to the Appeals Council, but this evidence was for a time period that began after the ALJ's final decision.  [R. 395-398].  As discussed above, evidence of disability must be for the relevant period.  20 C.F.R. §§ 404.970(b), 416.1470(b).  Therefore, this argument is without merit.

## Conclusion

For the above stated reasons, the Court finds that the ALJ did consider all of plaintiff's impairments throughout the process.  The ALJ's decision not to give the treating physician controlling weight was proper because there was substantial evidence that contradicted her opinion, including her own treatment notes.  The Court also finds the ALJ's credibility determination is closely and affirmatively supported by substantial evidence in the record.  The Court further finds that the ALJ did a proper evaluation at step five of the sequential process.  Accordingly, the decision of the Commissioner finding the plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 7th day of July, 2010.

_____

T. Lane Wilson
United States Magistrate Judge

15